**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALEX FODAY and FRED BERRIOS,** | ) |
| **Individually and on Behalf of All Others** | ) |
| **Similarly Situated,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AIR CHECK, INC., MARK S. RATHKE,** | ) |
| **ROMAN CHMIEL and TERESA** | ) |
| **KAMINSKA,** | ) |
| | ) |
| **Defendants.** | ) |

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, ALEX FODAY and FRED BERRIOS, individually and on behalf of all others similarly situated, for their Class Action and Collective Action Complaint against Defendants AIR CHECK, INC., MARK S. RATHKE, ROMAN CHMIEL, and TERESA KAMINSKA (collectively, "Defendants"), state as follows:

### Nature of Plaintiffs' Claims

1.       This is a collective action under the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA") involving airport workers employed by Defendants whose punched-in times were improperly and detrimentally rounded by Defendants. Defendants' rounding practice deprived these airport workers of their earned straight time and overtime wages.

2.       These airport workers are hourly paid employees, and perform tasks at O'Hare International Airport which include draining and recharging lavatory waste (known as "blue

water") from airplanes, cleaning up chemical spills on the runways and taxiways, snow removal, cleaning underground service tunnels and other outdoor tasks on airport property.

3. The airport workers use a time clock system to clock in and clock out during their work day, however, Defendants' supervisors typically reported the scheduled shift hours, and not all hours actually worked and/or reported on the time clock punch cards by the airport workers, on supervisor payroll summary sheets.

4. The airport workers have been required and/or permitted by Defendants to arrive to work early, before the start time of their scheduled shifts. During this unpaid pre-shift time, the airport workers nonetheless perform compensable tasks, including conducting pre-trip checks of their vehicles and collecting and preparing supplies and equipment. These airport workers perform work before the start time of their scheduled shifts, after the end of time of their scheduled shifts, and during their unpaid meal breaks.

5. Sarah Coady, Defendants' payroll coordinator, calculated payroll for the airport workers from the time reported on supervisor payroll summary sheets, without referring at all to the time recorded on the time clock punch cards.

6. Ms. Coady is the sole payroll coordinator for both Defendants and another janitorial contractor at O'Hare Airport, Scrub, Inc. Both AIR CHECK, INC. and Scrub, Inc. share: (a) the same corporate headquarters, located at 6033 Milwaukee Ave., Chicago, IL 60646; (b) the same President, Defendant MARK S. RATHKE, who determines payroll practices at both companies; (c) the same CEO and partial owner, Defendant ROMAN CHMIEL; and (d) the identical "Work Rules and Policies" handbook for all hourly employees.

7. The evidence of Ms. Coady's payroll rounding practice – that of calculating hourly workers' pay from scheduled shift hours reported on supervisor summary sheets, and not

all time worked by workers as reported on their actual time clock punch cards - was determined to be a sufficiently common policy or plan to violate the FLSA and to warrant conditional certification as a collective action under Rule 216(b) by the Honorable Robert W. Gettleman on April 29, 2015 in the matter of *Doris Solsol, et al., v. Scrub, Inc. and Teresa Kaminska*, Case No. 13-CV-7652 (herein, the "Scrub Litigation").[1]

## Jurisdiction and Venue

8.    This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.  This Court's supplemental jurisdiction over Plaintiffs' state law claims is required pursuant to 28 U.S.C. § 1367, because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.    This Court has personal jurisdiction over the Defendants for reasons that include:

(a)  Each of the Defendants conduct business and enter into contracts within the State of Illinois and in this District and with businesses located within the State of Illinois and in this District;

(b)  As more specifically pled below, each of the Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the

---

[1] In conditionally certifying a class of more than 4,000 janitors who worked at O'Hare airport pursuant to 29 U.S.C. Sec. 216(b) in the Scrub litigation, Judge Gettleman noted: "Because janitor pay is determined by input sheets and not the employee punch cards, it appears that janitors were frequently underpaid. These punch cards and input sheets, without more, provide more than a sufficient showing that a practice of violating the FLSA was in place." (See *Doris Solsol, et al., v. Scrub, Inc., et al.,* case no. 13-cv-7652, doc. no. 339, p. 5)

State of Illinois and airport workers who reside in this District, among other people;

(c) Each of the Defendants have purposefully directed the marketing of their janitorial services at residents and businesses located in the State of Illinois; and

(d) Defendants purposefully solicit Illinois businesses to enter into service agreements.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Illinois, and the causes of action set forth herein have arisen and occurred in part in the Northern District of Illinois.

## Parties

### i.    Plaintiffs

11.    Plaintiffs ALEX FODAY and FRED BERRIOS are residents of Chicago, Illinois and wre employed by and collectively worked between the years of 2011 to 2015 as hourly paid non-exempt airport workers for Defendants in this District during the applicable FLSA statute of limitations period.  A copy of Plaintiffs' consent forms are attached hereto as Exhibit A.

### ii.    AIR CHECK, Inc.

12.    AIR CHECK, INC. is an Illinois corporation founded in 1999, with its corporate headquarters located at 6033 Milwaukee Ave., Chicago, IL 60646. AIR CHECK, INC. does business as a janitorial firm, providing janitorial cleaning services and other airport commercial services to purchasers of said services at Chicago's O'Hare International Airport, and has employed over 100 airport worker employees during the class period alleged herein.

13.     At all times between November 10, 2012 through the present, AIR CHECK, INC. was the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA, the IMWL and the IWPCA.

14.     At all relevant times, AIR CHECK, INC. directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit.  Further, AIR CHECK, INC. both ratified and implemented the wage and rounding policies and practices directed at and used on Plaintiffs and the putative class members during the class period.

### *iii.    Mark S. Rathke*

15.     At  all relevant times, MARK. S. RATHKE was the President, General Manager and partial owner of AIR CHECK, INC.

16.     At all relevant times, MARK S. RATHKE had the power to hire and fire all hourly employees of AIR CHECK, INC.

17.     At all relevant times, MARK S. RATHKE oversaw Human Resource functions of AIR CHECK, INC.

18.     At all relevant times, MARK S. RATHKE oversaw disciplinary policies and practices for hourly employees of AIR CHECK, INC.

19.     At all relevant times, MARK S. RATHKE oversaw financial aspects of the operations of AIR CHECK, INC., including establishing, implementing and enforcing the payroll practices and policies of DEFENDANTS.

20.     At all relevant times, MARK S. RATHKE was involved in communications with the State and Federal Departments of Labor and the Equal Employment Opportunity Commission on behalf of AIR CHECK, INC.

21.     At all relevant times, MARK S. RATHKE had control over the FLSA, IMWL and IWPCA violations alleged in this Complaint.

22.      During the prior three years, MARK S. RATHKE was the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined in the FLSA, the IMWL and the IWPCA.

23.     At all relevant times, Sarah Coady was the sole payroll processor for AIR CHECK, INC. and Scrub, Inc. and reported to MARK S. RATHKE.

### iv.     *Roman Chmiel*

24.     At  all relevant times, ROMAN CHMIEL was the Chief Executive Officer and partial owner of AIR CHECK, INC.

25.     At all relevant times, ROMAN CHMIEL had the power to hire and fire all hourly employees of AIR CHECK, INC.

26.     At all relevant times, ROMAN CHMIEL oversaw Human Resource functions of AIR CHECK, INC.

27.     At all relevant times, ROMAN CHMIEL oversaw disciplinary policies and practices for hourly employees of AIR CHECK, INC.

28.     At all relevant times, ROMAN CHMIEL oversaw financial aspects of the operations of AIR CHECK, INC., including establishing, implementing and enforcing the payroll practices and policies of DEFENDANTS.

29.     At all relevant times, ROMAN CHMIEL had control over the FLSA, IMWL and IWPCA violations alleged in this Complaint.

30.     At all relevant times, ROMAN CHMIEL was aware of and had been advised of the illegal conduct violating the FLSA he personally supervised, in the course of his deposition

in the Scrub, Inc. litigation; and nonetheless continued to supervise and authorize those violations by Defendants.

31.     During the prior three years, ROMAN CHMIEL was the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined in the FLSA, the IMWL and the IWPCA.

### *v.* *Teresa Kaminska*

32.     At  all relevant times, TERESA KAMINSKA was formerly the President and is now the Vice-President of Operations and a partial owner of AIR CHECK, INC.

33.     At all relevant times, TERESA KAMINSKA participated in the hiring and firing of hourly employees of AIR CHECK, INC.

34.     At all relevant times, TERESA KAMINSKA oversaw Human Resource functions of AIR CHECK, INC.

35.     At all relevant times, TERESA KAMINSKA oversaw disciplinary policies and practices for hourly employees of AIR CHECK, INC.

36.     At all relevant times, TERESA KAMINSKA oversaw financial aspects of the operations of AIR CHECK, INC., including establishing, implementing enforcing the payroll practices and policies of DEFENDANTS.

37.     At all relevant times, TERESA KAMINSKA had control over the FLSA, IMWL and WPCA violations alleged in this Complaint.

38.     At all relevant times, TERESA KAMINSKA was aware of and had been advised of the illegal conduct violating the FLSA she personally supervised, in the course of her deposition in the Scrub, Inc. litigation; and nonetheless continued to supervise and authorize those violations.

7

39.     During the prior three years, TERESA KAMINSKA was the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA, the IMWL and the IWPCA.

40.     At all relevant times, TERESA KAMINSKA was responsible for, and in fact did, train all supervisors employed by AIR CHECK, INC. and Scrub, Inc. on how to complete supervisor payroll summary sheets.

41.     At all relevant times, TERESA KAMINSKA trained all supervisors employed by AIR CHECK, INC. and Scrub, Inc. to enter the hours of the scheduled shifts on supervisor payroll summary sheets for all days where hourly employees: (a) are present for work; (b) do not arrive late for work; and (c) do not leave work early.

### vi.     Additional Combined Actions of Defendants

42.     At all relevant times, TERESA KAMINSKA, directly and/or jointly with AIR CHECK, INC., MARK S. RATHKE, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit and ratified and implemented the wage and rounding policies and practices on Plaintiffs and the class members.

43.     At all relevant times, TERESA KAMINSKA, MARK RATHKE, ROMAN CHMIEL, and each of them, trained all AIR CHECK, INC. and Scrub, Inc. supervisors to deduct 15 minutes from any hourly employee that arrived to work 5 minutes after the start time of the scheduled shift.

44.     At all relevant times, supervisors employed by AIR CHECK, INC. and Scrub, Inc. deducted 15 minutes of pay from hourly employees that arrived 5 minutes after the start time of their scheduled shift, at the direction of each of the Defendants.

45. At all relevant times, hourly employees of AIR CHECK, INC. and Scrub, Inc. were required to obey all instructions from supervisors.

46. At all relevant times, hourly employees of AIR CHECK, INC. and Scrub, Inc. could be disciplined for failing to obey the instructions from supervisors.

47. At all relevant times, DEFENDANTS and Scrub, Inc. utilized the identical handbook titled "Scrub, Inc., Air Check, Inc. Work Rules and Policies" that was authored by MARK S. RATHKE.

48. At all relevant times, it was the payroll policy of DEFENDANTS and Scrub, Inc. to pay hourly, non-exempt employees for all work performed, regardless if the work was performed within or outside the scheduled shift hours of those employees.

49. At all relevant times, it was the payroll policy of DEFENDANTS and Scrub, Inc. to pay the agreed upon wage rate of each hourly, non-exempt employee for all hours worked during a week, up to forty (40) hours per week.

50. At all relevant times, it was the payroll policy of DEFENDANTS and Scrub, Inc. to pay 1.5 times the agreed upon wage rate for each hourly, non-exempt employee for all hours worked in excess of forty (40) hours a week.

51. At all relevant times, it was the payroll policy of DEFENDANTS and Scrub, Inc. to pay hourly employees for the time they spend in company transportation vans when they are being transported to and from their work areas and the punch clocks.

52. At all relevant times, the policies and practices of DEFENDANTS and Scrub, Inc. defined "work" as "whatever we dictate as part of what you are required to do if you're employed by Scrub or Air Check."

53.     At all relevant times, the policy and practice of DEFENDANTS and Scrub Inc. included the activities of gathering supplies and equipment in the definition of compensable work, regardless of whether those activities were performed within or outside of an hourly, non-exempt employee's scheduled shift time.

54.     At all relevant times, all hourly employees of DEFENDANTS and Scrub, Inc. were subjected to having their actual time, recorded on their time cards, rounded.

55.     DEFENDANTS have never interviewed, nor directed anyone to interview, individual hourly employees of either AIR CHECK, INC. or Scrub, Inc. in order to determine if those employees have been performing any compensable work-related activities either before the start time of their scheduled shifts, after the end time of their scheduled shifts, or during unpaid meal breaks.

56.     DEFENDANTS have never analyzed and compared, or directed anyone to analyze and compare, the payroll records to the punch cards of hourly employees of AIR CHECK, INC. and Scrub, Inc. to determine if hourly employees were being paid for all recorded work time.

57.     DEFENDANTS have never conducted an audit of how much time hourly employees for either AIR CHECK, INC. or Scrub, Inc. may have performed work during unpaid meal breaks.

## Factual Background

58.     All hourly workers employed by DEFENDANTS during the last three years have used punch cards as their daily timekeeping system.

10

### i.      Defendants' Practice of Rounding Punch Cards

59.      Plaintiffs worked as airport workers at O'Hare International Airport in Chicago during the prior three years.

60.      While working as airport workers at O'Hare International Airport for DEFENDANTS, Plaintiffs used punch cards as a timekeeping method.

61.      While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs were instructed by TERESA KAMINSKA and/or employees of DEFENDANTS acting under her direction and control, to arrive early, before their scheduled shift time, in order to don their safety gear, collect their supplies and equipment, meet with supervisors and get to their designated areas so that they would be at their designated areas, ready to begin working, at the start time of their regularly scheduled shifts.

62.      While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs would regularly arrive and punch-in for work before the start time of their scheduled shifts.

63.      While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs regularly performed work after punching-in, but before the start time of their scheduled shifts, including but not limited to donning safety equipment, collecting supplies, preparing equipment and vehicles and meeting with supervisors.

64.      While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs regularly worked through some or all of their thirty minute unpaid meal breaks.

65.      While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs regularly punched-out after the end time of their scheduled shifts.

66.     While working as airport workers at O'Hare International Airport during the last three years, Plaintiffs regularly performed work after the end time of their scheduled shifts, but before punching out, including but not limited to cleaning their equipment and vehicles, replenishing supplies, returning equipment and doffing safety equipment.

67.     During the last three years, the safety equipment that DEFENDANTS required the Plaintiffs and putative class members to don and doff before and after every scheduled shift included, without limitation, the insulated work jump suit, protective face mask, protective apron, neon security vest, plastic inner gloves, heavy duty exterior rubber gloves, chemical resistant rubber boots, a clipboard and a pen (hereinafter referred to as "Safety Equipment").

68.     The Safety Equipment that DEFENDANTS required the Plaintiffs to don and doff prior to and after each scheduled shift was required by Illinois and/or United States public health and workplace safety laws in order to protect workers from illness and injury when using and working with, amongst other chemicals, the Blue Water, human waste, and airplane de-icer.

69.     DEFENDANTS' corporate policies and procedures mandated the donning and doffing of the Safety Equipment by Plaintiffs and the putative class members prior to and after their scheduled shifts.

70.     The nature of the janitorial and commercial service work performed by Plaintiffs and the putative class at O'Hare International Airport, for the benefit and in the interest of DEFENDANTS – namely the handling of and exposure to hazardous chemicals and waste – required the use of the Safety Equipment by Plaintiffs and the putative class during their scheduled shifts.

71.     The Safety Equipment was the property of DEFENDANTS, remained on the work premises at all times and could not be donned or doffed by the Plaintiffs and putative class members at their homes or anywhere else other than the work premises.

72.     During the last three years, Defendants adjusted actual punch times to conform with even hours and/or scheduled shift times, which typically resulted in the Plaintiffs and putative class members being paid 40 hours per workweek, or 8 hours per shift.

73.     During the last three years, the punch cards of Plaintiffs were routinely rounded from the actual punched in time to a rounded time in for payroll reporting, to their detriment.

74.     During the last three years, the punch cards of Plaintiffs were routinely rounded from an actual punched out time to a rounded time out for payroll reporting, to their detriment.

75.     At the end of a pay period, Defendants would round away any times recorded on Plaintiffs' punch cards that were logged prior to the start time, or after the end time, of their regularly scheduled shifts.  The rounded times, not the actual times, were then used to calculate and process payroll for Plaintiffs.

76.     During the last three years, Plaintiffs and putative class members were regularly not paid for the additional minutes of overtime work performed prior to the start time of their scheduled shifts.

77.     During the last three years, Plaintiffs and putative class members were regularly not paid for the additional minutes of overtime work performed after the end time of their scheduled shifts.

78.     During the last three years, Plaintiffs and certain putative class members were regularly not paid for the additional minutes of overtime work performed during their unpaid meal breaks.

79.     Plaintiff class representatives ALEX FODAY and FRED BERRIOS estimate that they typically worked approximately 5 hours per two-week pay-period of unpaid overtime. Records indicating the number of hours that Plaintiffs Foday and Berrios worked are in the exclusive possession and control of Defendants.

80.     Defendants' practice of rounding janitors' punch cards is wide-spread and has occurred for a significant period of time during the last three years.

81.     The identity of the airport workers who used punch cards can be determined from the punch cards themselves, which are required to be kept by the DEFENDANTS pursuant to 29 C.F.R. § 516 and the FLSA.

82.     At all times relevant herein, MARK S. RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC. originated, controlled and implemented the policy, practice and procedure of disciplining, and ultimately terminating, all hourly airport workers who arrive after the start time of their scheduled shift.

83.     At all times relevant herein, MARK S. RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., originated, controlled and implemented the policy, practice and procedure of docking janitors for 15 minutes of time worked if they punched in for work 5 minutes late.

84.     As a result of Defendants' wage and hour and rounding practices as alleged herein, the Defendants benefited from reduced labor and payroll costs which, in turn, increased the earnings of DEFENDANTS.

85.     Defendants MARK RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and and each of them, directly and/or jointly with AIR CHECK, INC., controlled the setting of the

14

work schedules of Plaintiffs' and the putative class members by establishing the policy and practice of permitting and/or requiring airport workers to arrive early, before the start of their scheduled shifts.

86.     Defendants MARK RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., controlled the conditions of payment of Plaintiffs' and the putative class members by establishing the policy and practice of docking Plaintiffs and the putative class members 15 minutes of work if they punched in 5 minutes after the start of their scheduled shift.

87.     Defendants MARK RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., controlled the rate of pay for Plaintiffs' and the putative class members by establishing the payroll rounding policy, which effectively established the rate of pay for any work performed before the start time or after the end time of the scheduled shifts to $0.00 per hour.

88.     Defendants MARK RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., controlled the rate of pay for Plaintiffs' and the putative class members by establishing the payroll rounding policy, which effectively established the rate of pay for any work performed during unpaid meal breaks to $0.00 per hour

89.     Defendants MARK RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, directly and/or jointly with AIR CHECK, INC., maintained the employment records of the Plaintiffs and the putative class members, including without limitation personnel files, work applications, resumes, records of discipline, payroll records, and timekeeping records,

both at AIR CHECK, INC.'s offices at O'Hare International Airport and at the corporate

headquarters of AIR CHECK, INC. located at 6033 Milwaukee Ave,, Chicago, Illinois.

<u>**COUNT I**</u>

**VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES**

**(Brought as a Collective Action by Plaintiffs Doris Solsol and Yoli Sandra Rodriguez Diaz,
on Behalf of All Others Similarly Situated)**

1-89.    Plaintiffs re-allege Paragraphs 1 through 89 as and for Paragraphs 1 through 89 of

this Count I.

90.    Plaintiffs bring this count as a collective action on behalf of themselves and other

similarly situated janitors pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages,

liquidated damages, attorneys' fees and costs, and other damages owed.

91.     Plaintiffs and the putative class members are hourly-paid, non-exempt, full-time

janitors whom Defendants employed during the three year statutory period and whose daily

punch in and punch out time was rounded and/or unpaid as described above.

92.     The proposed collective class of similarly situated persons is defined as:

> "All individuals who were or are currently employed by the Defendants,
> their subsidiaries, affiliates, predecessors and/or successors, as airport
> workers or other similarly titled positions at any time during the relevant
> statute of limitations whose actual punch-in and punch-out times were
> rounded to their detriment."

93.    Common questions of law and fact exist as to all members of the class and

predominate over any questions that affect only individual members of the class.  These common

questions of law and fact include:

> i)    whether Defendants' improperly rounded the actual punch-in and
> punch-out times for airport workers; and

ii) whether Defendants' improperly failed to pay janitors for time worked during their unpaid lunch break.

94.     Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective class of overtime compensation and thereby increase their earnings and, ultimately AIR CHECK, INC.'s profits.

95.     Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

96.     Plaintiffs and the putative class members were not paid for all hours worked in excess of 40 in a week in violation of the maximum hours provisions of the FLSA, to wit, 29 U.S.C. 207(a).

97.     While punched in, Plaintiffs and members of the collective class were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, but that were necessary for the performance of their duties for Defendants and integral and indispensable to their principal activities.  Despite this, Plaintiffs and other members of the collective class regularly were required to work "off the clock" as set forth herein that entitled them to compensation therefore:

a.      Defendants required and/or permitted Plaintiffs and the putative class members to perform work and work-related tasks on the premises or at a prescribed work site, prior to punching in for work and before the start time of the scheduled shift, in the interest of the employer.

b.      During meal periods, which were not time for which Plaintiffs were paid, Defendants required and/or permitted Plaintiffs and the putative class members to remain on duty on the premises or at a prescribed work site in the interest of the employer.

c.      Defendants required and/or permitted Plaintiffs and the putative class members to routinely work through all and/or some of their meal periods, without pay;

17

      d.      Defendants required and/or permitted Plaintiffs and the putative class members to remain on duty on the premises or at a prescribed work site, after they were punched-out and off the clock, in the interest of the employer.

98.      Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs and the similarly-situated employees.

99.      Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

100.      At all times relevant hereto, the action of Defendants to not pay overtime for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay time and one-half for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

101.      As a direct and proximate result thereof, Plaintiffs and similarly situated janitors are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

102.      Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

103.      Plaintiffs estimate that there are at least one hundred fifty (150) putative members of the collective class.  The precise number of collective class members can be ascertained by using Defendants' payroll and personnel records.

104.      As of November 9, 2015 there are approximately 8 current and former airport workers who have opted into this collective action.  Please see attached Group Exhibit 1.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

A.    Authorize notice at the earliest possible time informing the similarly situated airport workers that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period; and

B.    Order the Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid airport workers employed by Defendants who currently or previously worked for Defendants in the United States within three years of the filing of the original Complaint whose time was rounded to their detriment; and

C.    Declare and find that the Defendants committed one or more of the following acts:

    i.  Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

    ii.  Willfully violated the overtime provisions of the FLSA; and

    iii. Willfully violated the recordkeeping provisions of the FLSA; and

D.    Award compensatory damages, including all pay owed, in an amount according to proof; and

E.    Award liquidated damages on all compensation due accruing from the date such amounts were due; and

F.    Enjoin Defendants from failing to pay Plaintiffs for all worked performed by Plaintiffs in the future; and

G.    Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

H.    For such further relief as the Court deems just and equitable.

<u>**COUNT II**</u>

**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**

**(Brought as a Class Action by Plaintiffs, ALEX FODAY and FRED BERRIOS,
Individually and on Behalf of All Others Similarly Situated)**

105.    Plaintiffs re-allege Paragraphs 1 through 89 as and for Paragraph 105 of this Count II.

106.    This Count arises from Defendants' willful violation of the IMWL for Defendants' failure to pay Plaintiffs and the class all their earned minimum wages and overtime wages under the provisions of the IMWL. Plaintiffs and the class are current and former employees of Defendants who are due, and who have not been paid, minimum wages and overtime wages.

107.    Section 105/4(a) of the IMWL requires employers to pay employees one and one half times their regular rate for all hours worked over 40 per work week. Section 105/12 provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and other appropriate relief.

108.    Defendants violated the IMWL by regularly and repeatedly failing to properly compensate Plaintiffs and the similarly-situated employees for the overtime they worked each week.

109.    The proposed class of similarly situated persons is defined as:

> "All individuals who were or are currently employed by the Defendants, their subsidiaries, affiliates, predecessors and/or successors, as airport workers or other similarly titled positions at any time during the relevant statute of limitations whose actual punch-in and punch-out times were rounded to their detriment."

110. Defendants' failure to compensate Plaintiffs and the putative class for the full amount for all hours worked violates Section 4(a) of the IMWL. 820 ILCS 105/4(a).

111. Count II is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impracticable.

112. The class representatives and the putative class members have been equally affected by Defendants' failure to pay overtime wages.

113. Furthermore, those putative class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

114. The issues involved in this lawsuit present common questions of law and fact, specifically:

    i. Whether Defendant's airport workers were required and/or permitted to arrive early to work, before the start time of their scheduled shift and/or remain at the workplace past the end time of their scheduled shift, in order to retrieve, gather and prepare their supplies and equipment and/or for re-supplying their equipment and supplies or other work-related meetings or tasks; and

    ii. Whether the putative class members were unpaid for their pre-shift and post-shift work; and

    iii. Whether the putative class members performed work during at least some and/or all of their unpaid meal breaks; and

    iv. Whether the putative class members were unpaid for any work performed during unpaid meal breaks.

115. These common questions of law and fact predominate over the variations which may exist between members of the class, if any.

116. The class representatives, the class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

117. The class representatives are able to fairly and adequately represent and protect the interests of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to class members, to the Court, and to the Defendants.

118. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

WHEREFORE, Plaintiffs, ALEX FODAY and FRED BERRIOS, pray that this Court award the following relief under Count II:

A. Certify a class of individuals who were employed by Defendants as hourly-paid non-exempt airport workers in the State of Illinois at any time during the relevant statute of limitations period;

B. Declare and find that the Defendants committed one or more of the following acts:

i. Violated provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq.*, by failing to pay minimum wages to Plaintiffs;

ii. Violated overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq.*, by failing to pay overtime wages to Plaintiffs; and

iii. Willfully violated minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq.*

C. Award compensatory damages, including all regular and overtime pay owed, in an amount according to proof;

D. Award interest on all regular and overtime compensation due accruing from the date such amounts were due;

E. Enjoin Defendants from failing to pay Plaintiffs for all worked performed by Plaintiffs in the future; and

F. Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G. For such further relief as the Court deems just and equitable.

## COUNT III

## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

**(Brought as a Rule 23 Class Action by Plaintiffs ALEX FODAY and FRED BERRIOS, Individually and on Behalf of All Others Similarly Situated)**

119. Plaintiffs re-allege Paragraphs 1 through 89 and Paragraphs 106-118 as and for Paragraph 119 of this Count III.

120. Plaintiffs, individually and on behalf of all others similarly situated, bring this Count III to recover from Defendants unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

121. At all times relevant, Defendants have been "employers," as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2, of the Plaintiffs and members of the putative IWPCA Sub-Class.

122. At all times relevant, Plaintiffs and the members of the putative IWPCA Sub-Class have been "employees" of Defendants, as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

123. At all times relevant, and at Defendants' request, Plaintiffs and the members of the putative IWPCA Sub-Class performed work for Defendants before and after their scheduled shift, as well as during all and/or part of their unpaid meal breaks.

124. At all times relevant hereto, Defendants were aware that its hourly employees performed work and work-related tasks before and after their scheduled shift, on a routine basis.

125. The task of performing work and work-related tasks before and after their scheduled shift is an essential component of Defendants' business operations at O'Hare Int'l Airport.

126.    Defendants at all times considered the tasks performed by airport workers before and after their scheduled shifts to be compensable work, had that same work been performed during their scheduled shift.

127.    Defendants' employee handbook permits and/or requires its airport worker employees to perform work for Defendants before and after their scheduled shift.

128.    Defendants' managers and/or supervisors often observed airport workers performing work and work-related tasks for Defendants before and after their scheduled shift, and often assisted them in performing that work.

129.    Under Defendants' policy and practice, Defendants required Plaintiffs to be present for work before and after their scheduled shift, on a daily basis.

130.    Defendants' business records reflected data, so that Defendants, including MARK S. RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, could see and know that hourly employees routinely performed work for Defendants before and after their scheduled shift.

131.    Defendants, including MARK S. RATHKE, TERESA KAMINSKA, ROMAN CHMIEL, and each of them, could see and know that hourly employees routinely performed work for Defendants before and after their scheduled shift.

132.    Defendants did not instruct Plaintiffs and similarly situated employees to not perform work for Defendants before and after their scheduled shift.

133.    Defendants permitted and/or required their hourly employees to perform janitorial and commercial services after the end of their scheduled shift time but before they were allowed to go home or otherwise engage in non-work activities.

24

134. By knowing of, permitting and/or requiring hourly employees to perform janitorial and commercial services for Defendants before and after their scheduled shift, Defendants assented to hourly employees performing janitorial and commercial services after the end time of their scheduled shift.

135. Defendants assented to pay Plaintiffs and the members of the putative IWPCA Sub-Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage hourly rate, for all work Defendants permitted and/or required, including at 1.5 times their regular hourly rate for all time beyond 40 hours worked in a week.

136. Defendants assented to the hourly employees performing janitorial and commercial services before, during and after their scheduled shifts, including during meal breaks, by, among other means, Defendants' knowledge and awareness of those duties being performed at those times, Defendant's policy and practice of permitting and/or requiring hourly employees to perform janitorial and commercial services before and after their shifts and during their meal breaks, and before and after they had clocked in or out, by the lack of any instruction or meaningful effort by Defendants to forbid or not allow the airport worker employees to perform janitorial and commercial services before or after their scheduled shifts, and through employee manuals and other directives distributed at and after an employee's orientation period that informed Plaintiffs and the members of the putative IWPCA Sub-Class that they must perform work duties before and after their scheduled shifts.

137. As set forth supra, Defendants also demonstrated their assent to the work by actually participating in pre- and post-shift work, as well as work during their unpaid meal periods, through the attendance of a management-level employee who would accompany

Plaintiffs and the members of the putative IWPCA Sub-Class to perform work duties before and after their scheduled shifts.

138.    Defendants regularly observed, without objection or negative comment, the record and documentation of having Plaintiffs and the members of the putative IWPCA Sub-Class perform pre- and post-shift janitorial and commercial services, and work through their meal periods, through their review of the scheduling and performance logs and other documentation of performing pre- and post-shift work and work during meal periods.

139.    Defendants required, as part of their Policy Manual that Plaintiffs and the members of the putative IWPCA Sub-Class perform pre- and post-shift work duties.

140.    Defendants' policy manual provides that its employees are to be paid for all time worked, including overtime.

141.    At all times relevant hereto, Defendants considered pre- and post-shift janitorial and commercial services to be compensable work.

142.    When Defendants hired Plaintiffs and the members of the putative IWPCA Sub-Class and advised them of the specific hourly rate they would be paid for all work performed by them, Defendants did not inform Plaintiffs and the members of the putative IWPCA Sub-Class that they would not be paid for the pre- and post-shift janitorial and commercial services they performed.

143.    When Defendants hired Plaintiffs and the members of the putative IWPCA Sub-Class and advised them of the specific hourly rate they would be paid for all work performed by them, Defendants did inform Plaintiffs and the members of the putative IWPCA Sub-Class that rest and meal periods would be intended to provide employees with an opportunity for rest and

relaxation, and that employees would be entirely relieved of responsibilities during their meal periods.

144.    Defendants have failed to pay Plaintiffs and the members of the putative IWPCA Sub-Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendants did not pay them for the pre- shift, meal period, and post-shift work described herein, in violation of the IWPCA, 820 ILCS § 115/4.

145.    Defendants have failed to pay Plaintiffs and the putative class the full amount for all hours worked because of the improper practices described herein.

146.    Illinois Statutes 820 ILCS §§115/1 *et seq*. defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties...".

147.    Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses...and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

148.    Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

149.    Defendants violated Illinois Statutes 820 ILCS §§115 *et seq.* by regularly and repeatedly failing to properly compensate Plaintiffs and the putative Illinois class members for the actual time they worked each week within 13 days of the date such compensation was earned, and by failing to properly compensate Plaintiffs and class members their rightful wages by the next scheduled payday after their separation.

150.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the putative class members have suffered and will continue to suffer lost wages and other damages.

151.    Plaintiffs and the members of the putative IWPCA Sub-Class have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiffs, ALEX FODAY and FRED BERRIOS pray that this Court award the following relief under Count III:

A.    Certify a class of individuals who were employed by Defendants as hourly-paid non-exempt airport workers in the State of Illinois at any time during the relevant statute of limitations period whose actual clock-in and clock-out times were rounded to their detriment;

B.    Declare and find that the Defendants committed one or more of the following acts:

i.    Violated provisions of the Illinois Wage Payment & Collection Act, 820 ILCS §115 *et seq.*, by failing to pay agreed upon wages and final compensation to Plaintiffs;

ii.    Violated overtime provisions of the Illinois Wage Payment & Collection Act, 820 ILCS §115 *et seq.*, by failing to pay agreed upon overtime wages to Plaintiffs; and

        iii.     Willfully violated minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*., by failing to pay the agreed upon amounts due.

C.     Award compensatory damages, including all regular and overtime pay owed, in an amount according to proof;

D.     Award statutory liquidated damages on all regular and overtime compensation due accruing from the date such amounts were due;

E.     Enjoin Defendants from failing to pay Plaintiffs for all worked performed by Plaintiffs in the future; and

F.     Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G.     For such further relief as the Court deems just and equitable..

JURY DEMANDED ON ALL COUNTS

Date: November 10, 2015

**Respectfully Submitted,**
**ALEX FODAY and FRED BERRIOS,**
**Individually and on Behalf of**
**All Others Similarly Situated.**

By: /s/ Glen J. Dunn, Jr.
       Glen J. Dunn, Jr.
       One of Plaintiffs' attorneys

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
312.789.9700

Glen J. Dunn, Jr.
Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
312.546.5056