**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALEX FODAY and FRED BERRIOS, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 15-cv-10205 |
| | ) | Judge Robert M. Dow, Jr. |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIR CHECK, INC., MARK S. RATHKE, ROMAN CHMIEL, and TERESA KAMINSKA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Alex Foday and Fred Berrios, individually and on behalf of all others similarly situated ("Plaintiffs") bring this collective action against Defendants Air Check, Inc. ("Air Check") and Mark Rathke, Roman Chmiel, and Teresa Kaminska (the "Individual Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). Currently before the Court is the Individual Defendants' motion for summary judgment [77]. The Individual Defendants argue that they are entitled to summary judgment because they are not "employers" subject to liability under the FLSA, IMWL or IWPCA. For the reasons explained below, the Individual Defendants' motion for summary judgment [77] is granted as to Chmiel and Kaminska and denied as to Rathke. Judgment is entered in favor of Chmiel and Kaminska and against Plaintiffs on Plaintiffs' FLSA, IMWL, or IWPCA claims. This case is set for status hearing on September 5, 2018 at 9:00 a.m.

## I.    Background

The following facts are taken from the Parties' Local Rule 56.1 statements and are undisputed except where a dispute is noted.  See [79], [81-1].  Named Plaintiffs Berrios and Foday were formerly employed by Air Check as lavatory service ("lav service") workers cleaning the lavatories on planes at Chicago O'Hare International Airport ("O'Hare").  Lav service workers remove waste from airplanes, flush out the lavatories and restore "blue water," and occasionally clean the front windshields of airplanes.  This lawsuit also involves "ramp workers," who do "a little bit of everything on the airfield," including sweeping up, making sure garbage is picked up, cleaning conveyors, power washing, cutting the grass, and snow removal in the winter.  [81-1] at 2.  As of July 2016, Air Check employed approximately 30 lav services workers and 15-20 ramp workers.

Lav service workers use manual time cards to "punch in" at the beginning and end of their shifts.  Their supervisors—Soraida Gonsales ("Gonsales"), Eugene Shats ("Shats") and Ramiro Sanchez ("Sanchez")—use the time cards to fill out supervisor summary sheets.  This lawsuit involves, among other things, the supervisors' alleged practice of "rounding" the actual hours recorded on employees' time cards to the employees' scheduled shift hours.  According to Defendants, if an employee is less than 8 minutes late for his shift, then he is not docked any pay.  However, if an employee is more than 8 minutes late, he loses a quarter hour of pay.  Essentially, according to Defendants, Air Check supervisors are trained to round the time either up or down based on the nearest quarter hour worked.  Defendants contend that this practice comports with 29 C.F.R. § 785.48(b).  Plaintiffs disagree about the legality of Air Check's rounding practice.  Further, Berrios testified that his time was always rounded down.  For example, if he was one minute late, 15 minutes would be deducted from the time he worked.

2

The complaint also alleges that lav service and ramp workers worked during their lunch breaks and before and after their shifts. Air Check supervisors usually deduct a 30-minute unpaid meal break from employees' time cards when completing the supervisor payroll sheets. According to Defendants, "[i]f an employee misses his or her lunch, then the employee should advise the supervisor and the supervisor makes a notation on the time card stating 'no lunch,' and the 30 minutes is not deducted from the employee's compensation." [81-1] at 5. However, Berrios testified that even though he would often work during his lunch meal period, Defendants always deducted 30 minutes from his paid time for lunch. Berrios further testified that his 30-minute lunch was never at a set time and could take place between 8:30 and 11:00 a.m. According to Berrios, his lunch break was truncated to 20 minutes on average, due to the planner or someone else interrupting his lunch. On three occasions, Berrios testified, a planner asked him to work during his lunch break. He agreed to the first request but objected to the subsequent ones. He complained to Shats and was not asked to service a plane during his lunch again.

Individual Defendant Chmiel is the CEO and minority owner of Air Check. Chmiel is responsible for generating new business and planning growth strategies for Air Check. He is not involved in any disciplinary action or pay decisions and does not have supervisory authority over lav or ramp workers. Plaintiffs dispute this characterization of Chmiel's role at Air Check. They point out that Chmiel made the decision to employ a new payroll company to issue employee checks, is in charge of bidding and acquisitions of new accounts, and had ultimate authority over purchasing and replacing certain equipment, such as the vans that janitors use for transport.

Individual Defendant Rathke is President of Air Check and reports to Chmiel. Rathke has no ownership interest in the company. He bids, negotiates, and oversees contracts for the cleaning services performed by Air Check at O'Hare. Defendants characterize these as his "primary" duties,

but Plaintiffs point to testimony by one of Air Check's managers, Soraida Gonsales ("Gonsales"), that Rathke was the ultimate authority for policy decisions and changes at Air Check, he had authority to hire and fire employees, and he was one of two company officers "who ultimately have to approve hirings and firings." [79-1] at 13. In addition, Rathke testified at his deposition that he wrote Air Check's Rules and Procedures Handbook ("Handbook"), which contains rules and procedures relating to "regular attendance during all scheduled hours of work, reporting to work on time, and continuing to work until the end of the scheduled work period," overtime, lunch periods and breaks, and handling and storage of equipment and supplies. [81-3] at 42-46. Rathke also testified that he is on the ground at O'Hare for a few hours nearly every day performing quality assurance inspections. *Id*. at 9-10. Rathke testified that all of Air Check's janitorial employees are subject to having the hours recorded on their time cards rounded in some way.

Individual Defendant Kaminska has never had an ownership interest in Air Check. Instead, she is the President of Scrub, Inc. ("Scrub"), an affiliate of Air Check. Berrios testified that he did not know "how [Kaminska is] related to Air Check" or if she had "done anything related to Air Check" but knew only that "she's one of the big bosses at the airport" and "runs and oversees operations." [79-2] at 17.

In their governing complaint [1], Plaintiffs allege that Defendants' practices of "rounding" time worked and requiring employees to perform work off the clock deprived them of overtime pay to which they were entitled, in violation of the FLSA (Count I) and the IMWL (Count II). Plaintiffs also allege that Defendants violated the IWPCA by knowingly allowing hourly employees to routinely perform work before and after their scheduled shifts and during their unpaid meal breaks (Count III).[1]

---

[1] Plaintiffs filed a first amended complaint [71], but it was stricken by Judge Der-Yeghiayan, to whom this case previously was assigned. See [72].

4

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by * * * citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (internal quotation marks and citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

### III.   Analysis

#### A.      FLSA Claim

The Individual Defendants move for summary judgment on Count I of Plaintiffs' complaint on the basis that they should not be considered "employers" subject to liability for violation of the FLSA.  The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."   29 U.S.C. § 203(d).   This definition "'contemplates several simultaneous employers who may be responsible for compliance with the FLSA.'"  *Pietrzycki v. Heights Tower Service, Inc*., 290 F. Supp. 3d 822, 850–51 (N.D. Ill. 2017) (quoting *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011)).   In assessing whether an individual is an "employer," the Court assesses "the 'economic reality' of the working relationship."  *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014).   "Relevant factors include whether the alleged employer: '(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Deschepper v. Midwest Wine and Spirits, Inc*., 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (quoting *Nehmelman v. Penn Nat'l Gaming, Inc*., 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011)).

The "overwhelming weight of authority" is that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Solis v. Int'l Detective & Protective Service, Ltd*., 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (citing *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991)). Thus, courts in this district have "held that corporate officers with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees can be personally liable for the corporation's failure to pay

owed wages." *Id.* (collecting cases). However, "the mere facts of stock ownership or officer status in an entity that employed the complaining employee" are not "enough to deem an individual an employer," and "'[u]nexercised authority is insufficient to establish liability as an employer.'" *Cardenas v. Grozdic*, 67 F. Supp. 3d 917, 923 (N.D. Ill. 2014) (quoting *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc*., 515 F.3d 1150, 1161 (11th Cir. 2008)).

With this legal framework in mind, the Court concludes that Kaminska and Chmiel are entitled to summary judgment, but Rathke is not. Kaminska is entitled to summary judgment because there is no evidence in the record that she has any connection to Air Check, either as an owner or an executive. Instead, the evidence is that Kaminska is president of Air Check's affiliate, Scrub, which is not a party to this lawsuit. Plaintiffs maintain, based solely on Berrios' testimony, that "Kaminska runs and oversees the operations of Air Check." [81-1] at 8. But that misstates the cited testimony. When Berrios was asked, "Do you know how [Kaminska is] related to Air Check?", he responded, "All I know is she's one of the big bosses *at the airport*. She runs and oversees operations." [79-2] at 17 (emphasis added). When further pressed, "But you don't know that she's done anything related to Air Check?", he answered, "No." *Id*. In other words, Berrios testified that Kaminska ran operations at the airport, but not at Air Check itself. Apart from Berrios' testimony, there is no evidence that Kaminska worked for Air Check. The deposition testimony that Plaintiffs cite concerning Kaminska's job responsibilities all pertain to Scrub, not Air Check. See [81] at 5. Based on this record, the Court must conclude that Kaminska is not an "employer" responsible for Air Check's compliance with the FLSA.

Chmiel is also entitled to summary judgment. While he is CEO and a minority owner of Air Check, there is no evidence that he has any involvement in the day to day operation of the company's lav workers. Nor have Plaintiffs come forward with any evidence that Chmiel has any

of the powers associated with an "employer," such as the ability to hire and fire, to supervise or control work schedules and conditions of employment, or to determine the rate and method of payment. See *Pietrzycki*, 290 F. Supp. 3d at 850; compare *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 698-99 (N.D. Ill. 2015) (company's two officers were not "employers" subject to the FLSA, where they delegated operational authority to a supervisor; they were unaware that supervisor was deleting hours or that employees' wage was set below legal minimum; they acted immediately to fix violations when they learned of them; they did not control company's operations; and they never hired or fired any employees, supervised or controlled work schedules, or determined rate or method of payment); *Cardenas*, 67 F. Supp. 3d at 923-24 (owner of real estate company was not "employer" under the FLSA, where there was no evidence that he hired or supervised plaintiff or set plaintiff's hours, wage, schedule, or payment terms).

Plaintiffs contend that several other facts support treating Chmiel as an employer, including that Chmiel hired a new payroll company to issue checks and that Chmiel is responsible for bidding and acquisition of new accounts and the purchase of certain equipment, such as the vans that janitors use for transport. But Plaintiffs do not explain how these facts relate to whether Plaintiffs were properly paid for all work they performed. In cases where executives have been found liable as "employers" under the FLSA, there has been evidence of far greater control over the terms and conditions of the plaintiffs' employment. See, e.g., *Perez*, 55 F. Supp. 3d at 1075-76 (owner of entity that hired maids to clean homes was an "employer" under the FLSA where owner was responsible for managing day-to-day operations of business, including hiring, work schedules, discipline, and pay, and owner maintained employment records, using spreadsheets to track jobs, make note of discipline-related pay deductions, and calculate pay due); *Solis*, 819 F. Supp. 2d at 749 (president and sole owner of commercial security company was "employer" under FLSA

8

where owner was responsible for payroll, accounting, and invoicing, signed paychecks, and controlled all of company's corporate activities); *Natal v. Medistar, Inc*., 221 F. Supp. 3d 999, 1003 (N.D. Ill. 2016) (CFO of medical transportation services company was "employer" under FLSA where he was only person at company with control over payroll, accounting, and setting compensation, and he computed employees' hours, determined wages, signed a majority of checks, determined what deductions would be taken from paychecks, delayed paychecks when company lacked funds to pay its outstanding liabilities, answered employees' questions about pay, and decided how to classify employees).

Finally, the Court concludes that Rathke is not entitled to summary judgment because a reasonable juror could find that he was liable for Air Check's FLSA violations due to his leadership position and operational control of Air Check. Rathke wrote the Handbook, which arguably set the expectation of arriving early to gather equipment and working until the end of a scheduled shift even if there was additional "work" to do afterwards (like moving equipment, cleaning up). In addition, there is evidence that Rathke—unlike Kaminska or Chmiel—had authority to hire and fire Air Check employees, was on the ground at O'Hare nearly every day, and knew that Air Check's janitorial employees were subject to having the hours recorded on their time cards rounded in some way. These facts tend to show that Rathke is "a corporate officer with operational control" of Air Check, and therefore subject to potential liability as an "employer" under the FLSA. *Solis*, 819 F. Supp. 2d at 748-49.

For these reasons, Kaminska and Chmiel, but not Rathke, are entitled to summary judgment in their favor on Plaintiffs' FLSA claim.

B.    IWPCA and IMWL Claims

Plaintiffs also brings claims against the Individual Defendants for violation of the IWPCA and IMWL.  However, Plaintiffs' response to summary judgment does not separately address these statutes or the applicable legal standards for holding individuals responsible for an entity's statutory violations.

The Illinois Supreme Court has interpreted the IWPCA to apply to individuals who "knowingly permit" an employer to violate the statute.  See *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 899-900 (Ill. 2005) (citing 820 ILCS 115/13).  Here, Plaintiffs have come forward with no evidence that Kaminska or Chmiel knowingly permitted violations of the IWPCA. Compare *Andrews*, 838 N.E.2d at 901-02 (employer's sole shareholder did not knowingly permit employer to violate the IWPCA where alleged statutory violations occurred after bank had seized employer).  However, Rathke testified that all of Air Check's janitorial employees are subject to having the hours recorded on their time cards rounded in some way.  Plaintiffs' theory is that this rounding process deprived them of the full wage to which they were due.  Therefore, there is some factual basis from which to argue that Rathke knowingly permitted violations of the IWPCA.  The Court therefore grants summary judgment in favor of Kaminska and Chmiel, but not Rathke, on Plaintiffs' IWPCA claim.

Finally, the Court considers the IMWL claim.  "Claims brought under the FLSA and IMWL are evaluated using the same general analysis."  *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 811 (N.D. Ill. 2011) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)).  However, Illinois courts have not determined whether the "economic reality" test of the FLSA or the "knowingly permit" test of the IWPCA should apply "if presented with a question of personal liability under the IMWL."  *De La Riva v. Houlihan Smith & Co., Inc.*, 848 F. Supp.

2d 887, 893 (N.D. Ill. 2012). It is unnecessary for the Court to resolve that issue here, because Kaminska and Chmiel are entitled to summary judgment and Rathke is not entitled to summary judgment under either standard, for the reasons explained above.

## IV.    Conclusion

For these reasons, the Individual Defendants' motion for summary judgment [77] is granted as to Chmiel and Kaminska and denied as to Rathke. Judgment is entered in favor of Chmiel and Kaminska and against Plaintiffs on Plaintiffs' FLSA, IMWL, or IWPCA claims. This case is set for status hearing on September 5, 2018, at 9:00 a.m.

Dated: August 20, 2018

_____

Robert M. Dow, Jr.
United States District Judge

11